RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  11 / 3 / 05
BY  DM

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

LEONA BELL COLLINS

versus

CENTENARY COLLEGE OF LOUISIANA

CIVIL ACTION NO. 04-1161
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, Centenary College of Louisiana ("Centenary"). See Record Document 20. For the reasons set forth below, Centenary's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

Leona Bell Collins ("Collins") was employed by Centenary as a Visiting Assistant Professor of Education. Centenary offered Collins a two year appointment to commence on August 16, 2000 and terminate in May 2002. Centenary told the plaintiff that a new tenure track position would become available at the end of her two year term, for which she was welcome to apply. Collins's normal workload required her to teach twelve contact hours per semester. Teaching assignments in

1

excess thereof were to be paid as a supplement to her salary, subject to approval by the Provost. The plaintiff contends that she was unfamiliar with the courses she was required to teach during her first semester, as she had never taught any of them and, in addition, had not taught in a classroom setting in twenty years.

The plaintiff's immediate supervisor was the Chair of the Education Department, Dr. Sue Hernandez. In accordance with Centenary's guidelines, Collins was evaluated by her students each semester and by Dr. Hernandez during the fall 2000 and fall 2001 semesters. The students completed a survey comprised of twenty-one questions in which they rated the plaintiff's performance on a five-tier scale between very poor and excellent.[1] Collins evidently concedes that the scores given her by her students were low during the fall 2000 semester,[2] but maintains that her scores improved during the spring, summer and fall semesters of 2001. Centenary contends that, despite any improvement, Collins's evaluations were still

---

[1] The five potential responses consist of very poor, poor, satisfactory, good and excellent.

[2] A letter to Collins from Dr. Earl Fleck, Provost and Dean of the College, stated "The [Faculty Personnel Committee] has some concerns about your student evaluations .... In spite of these areas of concern, we will renew your contract for another year. We trust that you will address these areas of concern this spring and early next fall." Record Document 20, Ex. A-2.

2

below the college's standards.[3]

In order to complete Collins's fall 2000 evaluation, Dr. Hernandez observed Collins's teaching performance and reviewed her student evaluations. Dr. Hernandez concluded that "I believe that there were clearly more than a few problems with Dr. Collins'[s] teaching this past fall. However, I would like to be given the opportunity to assist her during the spring in some specific areas, and I would like for her to be afforded the opportunity to improve during the next school year . . . ." Record Document 20, Ex. B-1.

After the fall evaluation, the relationship between Collins and Dr. Hernandez became strained and contentious. Collins alleges that on numerous occasions Dr. Hernandez belittled her in front of others, interrupted her teaching lessons, refused

---

[3] Viewing Collins's student evaluations, it is clear that she did, in fact, improve in certain categories during the spring of 2001. Nevertheless, it is also apparent that her scores worsened in some areas. Her summer 2001 evaluations, however, demonstrate that the students were much more pleased with her performance than in either the fall 2000 or spring 2001 reviews. In fact, Dr. Hernandez declares in her evaluation of Collins's Supervision of Teachers class, taught during Summer I 2001, "Dr. Collins scored better than her colleagues on 10 of the 16 items. On the other 6, she scored only slightly lower than the aggregate score of her colleagues." Record Document 20, Ex. B-2 at 10. In that same course taught during Summer II 2001, "Dr. Collins outscored other professors on every category that was evaluated." Id. at 11. Finally, in one of Collins's Summer II 2001 courses, she "scored better than the aggregate report on 6 of the 16 items." Id.

3

her the opportunity to teach extra classes, and made offensive racial remarks. Not surprisingly, Dr. Hernandez's second evaluation of Collins, completed during the fall of 2001, was much harsher than its predecessor. Based on classroom observation and student evaluations, Dr. Hernandez concluded that "there have been more than a few problems with Dr. Collins'[s] teaching in the past two full semesters, the summer session, and this fall. Therefore, I recommend that her contract not be extended beyond May 2002." Record Document 20, Ex. B-2 at 13. Pursuant to this recommendation, Centenary notified Collins that it planned to terminate her contract at the end of the spring 2002 semester. Further, though Collins applied for the new tenure track position, her request was denied. Instead, Centenary hired a Caucasian woman to fill the position.

Collins filed the instant suit, pro se, alleging racial discrimination, retaliation, unfair labor practices, hostile work environment, defamation, and breach of contract.[4] See Record Document 1. Centenary then filed a motion for summary judgment. See Record Document 20.

---

[4] Although Collins filed her original and amended complaints pro se, she has since retained counsel, who responded to the defendant's motion for summary judgment on the plaintiff's behalf.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## B. Title VII Analysis.

Collins alleges both discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. She claims that Centenary discriminated against her based on race when it refused to hire her for the tenure position and hired a Caucasian employee instead. Additionally, she maintains that Centenary retaliated against her in violation of Title VII after she (1) failed to accept an offer to teach five classes during the spring 2001 semester, (2) shared her concerns regarding the amount of time necessary to evaluate student teachers, and (3) complained to Centenary's Provost about "the lack of due process in the decision-making." Record Document 9 at 9-10.

With respect to the plaintiff's discrimination claim, Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII violation by proving that racial discrimination has created a hostile or abusive work environment. See Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002); Celestine v. Petroleos De Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001). With

respect to the plaintiff's retaliation claim, Title VII makes it unlawful for "an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a).

A prerequisite to filing a Title VII action in federal court is the timely filing of a charge with the Equal Employment Opportunity Commission ("EEOC"). See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982). A plaintiff in a Title VII action must bring her charge to the EEOC or State agency "within three hundred days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000(e)-5(e)(1). See also Mayes v. Office Depot, Inc., 292 F.Supp.2d 878, 888 (W.D.La 2003). The time within which the plaintiff must file her claim with the EEOC begins when she "knows or reasonably should have known that the challenged action has occurred." Id. "A one-time employment event, including the failure to hire, is 'the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.'" Id. (quoting Huckabay v. Moore, 142 F.3d 233, 240 (5th Cir. 1998)). The termination of the employer-employee relationship generally ends the employee's purported discrimination. See id.

In the instant case, there are three salient dates for determining whether Collins filed within the statutory period. First, she was notified on November 6, 2001 that her two year appointment would terminate at the end of the spring 2002 semester. Second, on February 1, 2002, she was notified that she was no longer a candidate for the tenure position. Finally, Collins alleges in her EEOC charge that her last day of work at Centenary was May 31, 2002. However, she did not initiate her charge of discrimination until April 30, 2003, nearly one year later. At the very most, Collins had 300 days from May 31, 2002 (her last day of employment with the defendant) to file her charge, if that were considered the most recent date on which discrimination occurred, rather than the November 6, 2001 and February 1, 2002 events. However, even if counting from May 31, 2002, the latest of the possible discrimination dates the plaintiff provides, Collins fails to satisfy the requisite 300 day statutory period. Accordingly, the discrimination[5] and retaliation[6]

---

[5] Even if this court were to reach the merits of the discrimination claim, it is not clear from the evidence presented that Collins established a prima facie case of discrimination. However, assuming without deciding that a prima facie case exists, Collins nevertheless cannot survive summary judgment because she cannot demonstrate that the legitimate, non-discriminatory explanations offered by Centenary "were not its true reasons, but were a pretext for discrimination." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 133 S. Ct. 2742, 2749 (1993); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 138-40, 120 S. Ct. 2097, 2104-05 (2000). Centenary's explanation hinges on the plaintiff's inability to perform to its or its students' satisfaction. Collins's substandard performance

claims alleged in her complaint are barred.

## C. Unfair Labor Practices.

Collins contends that Centenary engaged in unfair labor practices. Unfortunately, she provides the court with no factual or legal support for this claim other than the bare assertion that Centenary was being sued "for patterns of unfair labor practices . . . ." Record Document 9 at 2. Neither in her original complaint nor in her amended complaint does the plaintiff supplement this allegation with any substantive support. Indeed, not a single case or even a single fact is cited in the one sentence dedicated to this issue. In its motion for summary judgment, Centenary responded to this issue on the merits, contending that this court lacks jurisdiction over unfair labor practice violations and that jurisdiction over such

---

evaluations provide a legitimate reason for her termination. She has not presented sufficient evidence to support a reasonable inference of discrimination and thereby rebut the defendant's showing of a legitimate, non-discriminatory reason for her termination. She has offered nothing, outside of mere speculation, to show that Centenary's reasons for her termination were false. Accordingly, even if Collins's claims were not prescribed, they would not survive summary judgment.

[6] Again, even if this court were to reach the merits of Collins's retaliation claim, she would be unable to sustain summary judgment as her claims are without merit. Collins' allegations of retaliation are outside the ambit of Title VII's statutory requirements. Accordingly, her allegations and the conduct for which she was allegedly retaliated against fall short of the Title VII mandates.

matters is instead reserved for the National Labor Relations Board ("NLRB").[7] In her opposition to Centenary's motion for summary judgment, Collins failed to issue a response to this line of argument.

In summary judgment, the non-movant's response must set forth specific facts showing there is a "genuine factual issue for trial." Brennan v. Mercedes Benz, 388 F.3d 133, 135 (5th Cir. 2004). In the instant case, Collins's duty is to inform the court of the reasons why summary judgment is improper. See Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1164 (5th Cir. 1983). Here, however, she has failed to carry this burden by neglecting to adequately articulate any factual underpinnings or legal authority to survive summary judgment. More importantly, she neglected to address this claim in her opposition to the defendant's motion for summary judgment. Even though a theory is pled in a complaint, it can still be waived if not raised in opposition to a motion for summary judgment. See Hargrave, 710 F.2d at 1163-64; see also Batterton v. Tex. Gen. Land Office, 783 F.2d 1220, 1224-25 (5th Cir. 1986). Because Collins failed to establish a genuine factual dispute on this issue or even raise the claim in her opposition, she has

---

[7] This court does not reach the issue of whether it lacks jurisdiction to hear an unfair labor practice case, as such a determination would be an unnecessary exercise under the circumstances.

abandoned this theory of recovery.

**D. Hostile Environment.**

Collins also avers that Centenary created a hostile work environment in violation of Title VII and the Labor Management Relations Act, 29 U.S.C. §§ 141-187. Although not exhaustive, some of the alleged violations include: (1) a Centenary employee[8] videotaping her class without permission and interrupting her teaching lesson; (2) Centenary's failure to follow procedural guidelines during the student evaluation process; (3) withholding the plaintiff's student evaluations from her; (4) not asking or not allowing the plaintiff to attend certain meetings; (5) assigning the plaintiff a Multicultural presentation[9] without her permission, which she viewed as "outrageous and racist behavior"; (6) allowing a Centenary employee to "walk[] the halls continuously while plaintiff was teaching"; (7) allowing a

---

[8] Rather than referring to Centenary's employees by name, Collins loosely refers to most of her co-workers and supervisors as "defendant".

[9] It appears from the plaintiff's pleadings that such an assignment was not an oddity or attributable to racism as the plaintiff contends. In fact, the plaintiff formerly taught Ethnic studies, admittedly taught "Introduction to Multicultural Education" on numerous occasions, and concedes that her primary research area involves the role of African-American women in education. More importantly, when asked to present a lesson as a part of her interview process, the plaintiff **chose** to present a "multicultural education lesson about difference." Record Document 9 at 6.

Centenary employee to report the plaintiff's personal medical information to students; and (8) calling the plaintiff a "party person." See Record Document 9 at 11 and 13.

### 1. Title VII.

As with the plaintiff's Title VII claims of discrimination and retaliation, Collins's Title VII hostile environment claim has prescribed because she failed to file her charge within the requisite 300 day period. See supra Part II(B).[10]

### 2. Labor Management Relations Act.

Collins maintains that Centenary created a hostile environment in violation of the Labor Management Relations Act, 29 U.S.C. §§ 41-187 ("LMRA"). In its motion for summary judgment, Centenary responds that claims under the LMRA are preempted by the NLRB, and that this court therefore lacks jurisdiction. Citing

---

[10] Again, if this court were to reach the merits of the plaintiff's Title VII hostile environment claim, Collins has not demonstrated a sufficient showing to survive summary judgment. In order for harassment on the basis of race to be considered to "affect a term, condition, or privilege of employment," the harassment must be "'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" Ramsey v. Henderson, 286 F.3d 264, 268 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)). Critically, Centenary's alleged actions have no recognizable connection to any race. Even if taken as true, as the court must do at the summary judgment stage, Centenary's actions simply do not rise to the level of harassment necessary to alter the terms or conditions of employment and do not appear to be even tangentially related to race.

for her to demonstrate a genuine issue of material fact. Accordingly, this theory of recovery is deemed to have been waived.

**E. Defamation.**

Collins avers that Centenary and its employees defamed her during her employment with the defendant. Although not exhaustive, some examples of the plaintiff's allegations are illustrative of her claims. She contends that the defendant defamed her by (1) presenting negative performance evaluations to the Faculty Personnel Committee, (2) telling the plaintiff's students that she would not return to Centenary after 2002 because "she made everything a Black and White issue," (3) allowing a Centenary employee to point her finger and yell at the plaintiff, (4) allegedly telling a student that the plaintiff was recruited to teach Multicultural Education and then allegedly denying such a statement, and (5) demeaning the plaintiff. See Record Document 9 at 14-15.

To demonstrate an action for defamation, Collins must prove (1) defamatory statements, (2) publication to a third party, (3) falsity, (4) malice, and (5) damages or injury. See Pinner v. Schmidt, 805 F.2d 1258, 1264 (5th Cir. 1986); see also Rice v. Felterman, 00-2525 (La.App. 1 Cir. 3/28/02); 814 So.2d 696, 698. The prescriptive period for a defamation action is governed by Louisiana Civil Code

Article 3492 which provides that "delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La.Civ. Code art. 3492. The statements complained of by the plaintiff were made while she was still employed with the defendant. Thus, any damage that she suffered occurred during her employment and ended, at the latest, on her last day of work on May 31, 2002. However, Collins did not file suit in court until May 25, 2004, nearly two years later. Therefore, her action is barred by the limitations period provided by Article 3492.

## F. Breach Of Contract.

Lastly, Collins contends that Centenary is in breach of contract because it failed to pay her for extra hours that she taught during the fall 2000 and spring 2001 semesters. Collins's appointment letter stated, "Your normal teaching load at Centenary will be 12 contact hours per semester. Additional teaching assignments during the academic year (as overloads) . . . are paid as salary supplements, if approved by the Provost." Record Document 28, Ex. A-1. Collins contends that she worked in excess of twelve contact hours during each of these semesters, but was not paid accordingly.

Plaintiff also contends that Centenary breached its contract by requiring her

United States v. Palumbo Brothers, Inc., 145 F.3d 850, 861 (7th Cir. 1998), Centenary contends that "[o]nly the NLRB has the jurisdiction and authority to review and remedy unfair labor practices . . . ." Record Document 20 at 17. However, the defendant fails to include the conclusion of that same sentence which provides an important qualification to the preceding thought: "as a *general* rule, the NLRB preempts both federal and state claims based on conduct that is '*arguably* prohibited' under the NLRA." Palumbo, 145 F.3d at 861 (emphasis added).

Without reaching the merits of Centenary's defense, which can be characterized as broad at best, this court finds that the plaintiff has failed to meet summary judgment standards. In its motion for summary judgment, Centenary alluded, albeit briefly, to this issue on the merits claiming NLRB preemption. In her opposition, Collins wholly failed to raise or defend this claim. As in her unfair labor practices claim, Collins bears the burden to demonstrate that a genuine dispute exists. Her response must set forth specific facts showing there is a "genuine factual issue for trial." Brennan v. Mercedes Benz, 388 F.3d 133, 135 (5th Cir. 2004). Without a doubt, in order to satisfy her summary judgment burden, Collins must first **address** the argument in her opposition. This she has failed to do. Again, because she has neglected to raise these arguments in her opposition, it is impossible

13

to teach during the summer semester. Her understanding of the agreement with Centenary was that teaching during the summer was optional. Centenary's offer does not explicitly say whether summers were required, but rather states that teaching during the summer sessions would be paid as a salary supplement. See Record Document 28, Ex. A-1.

Defendant responds to the plaintiff's first argument by explaining that Centenary's method for determining a teacher's teaching load "starts with the premise that 5 students in a practicum = 3 contact hours." Record Document 20 at 17. Thus, if there are fewer than five students in a particular class, the contact hours credited toward the teacher's teaching load are less than the course's credit hours.[11]

According to the record, the plaintiff taught four classes in the fall 2000 semester. See Record Document 20, Ex. A-4. They included (1) Methods of Teaching Elementary Language Arts and Social Studies (EDUC 305), a five hour course; (2) Theories of Learning (EDUC 525), a three hour course; (3) Foundations

---

[11] It should be noted that Centenary neither provided any further explanation regarding its method for calculating contact hours nor submitted any documents in support of this assertion. This, however, is not germane to the resolution of the dispute.

16

of Early Childhood (EDUC 351/551), a three hour course; and (4) Practicums in Kindergarten and Nursery School (EDUC 453/553, 454/554), a three hour course. Defendant contends that Collins was not due extra compensation for the fall semester because, although the courses' credit hours totaled fourteen, she did not teach in excess of twelve *contact* hours. Rather, it claims that because Practicums in Kindergarten and Nursery School (EDUC 453/553, 454/554) had only one enrolled student, Collins earned only one contact hour.[12]

During spring 2001, Collins taught Theories of Learning (EDUC 525), a three hour course; Multicultural Education (EDUC 203), a nine hour course;[13] Methods and Materials of Early Childhood (EDUC 352/552), a three hour course; Elementary Student Teaching (EDUC 430), a three hour course; and Senior Seminar

---

[12] It should also be noted that Centenary's explanations of Collins's teaching load during the pertinent semesters contain several inconsistencies. In other words, the numerical figures used by Centenary in its motion for summary judgment differ from those used by Dr. Hernandez in her evaluations of the plaintiff. The court does not reach the issue of the importance of the discrepancies as Collins failed to respond to the issue in her opposition. Because she failed to do so, the disparities are of no moment.

[13] Dr. Hernandez's second evaluation states that Multicultural Education was a nine credit hour course, but in the defendant's motion for summary judgment, Centenary states that this course was only three credit hours. Again, there is a conflict between Centenary's exhibits and the statements made in its motion, but the discrepancy is irrelevant here.

17

(EDUC 471), a one hour course. See Record Document 20, Ex. B-2 at 2. The credit hours for this semester totaled nineteen.[14] Again, the defendant contends that the plaintiff was not due extra compensation for this semester because she did not teach in excess of twelve contact hours. Rather, because Elementary Student Teaching (EDUC 430) had less than five students, it counted as only two contact hours instead of three.

Centenary responds to the plaintiff's second argument regarding summer sessions by maintaining that it did not violate her contract. Although the appointment letter does not clearly state during which semesters the plaintiff was required to teach, it implies that summers were a possibility by providing that teaching assignments during the summers would be paid as salary supplements. Centenary further contends that Collins was paid for teaching summer classes and thus incurred no damages in the event a breach is found.

Without relying on Centenary's purported method of calculation or other arguments, this court finds that the defendant has satisfied its burden for summary judgment and, in doing so, has shifted the burden to Collins. Although Centenary

---

[14] This figure is reached by using the nine credit hour figure used by Dr. Hernandez in her evaluation, rather than the figures provided in the defendant's motion for summary judgment.

is obligated to demonstrate an absence of evidence to support Collins's case, Collins has the burden to inform the court of the reasons why a grant of Centenary's motion is improper. See Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1164 (5th Cir. 1983). Indeed, "any genuine issue of material fact must somehow be shown to exist in the District Court." DeBardeleben v. Cummings, 453 F.2d 320, 324 (5th Cir. 1972). Although Centenary arguably provided only minimal support for its arguments, that is not dispositive of the ultimate issue. Of critical importance is the fact that Collins wholly failed to raise her contract issue in her opposition to Centenary's motion for summary judgment despite the fact that Centenary specifically addressed this theory in its motion. Collins's failure is deemed a waiver of this issue for summary judgment purposes, regardless of the fact that she pleaded this theory in her complaint. Indeed, even a theory that has been pleaded is waived if not raised in opposition to a motion for summary judgment. See Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1163-64 (5th Cir. 1983). Because Collins's opposition failed to not only establish the existence of a genuine factual dispute, but altogether failed to even mention her contract claim, she has effectively abandoned that claim.[15] As Collins bears the burden of proof at trial, her obligation entails

---

[15] "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."

issuing a response to the defendant's motion on each and every theory of recovery and demonstrating that there are genuine factual disputes at issue, or otherwise risk losing at the summary judgment phase. Because she neglected to satisfy her burden, she cannot survive summary judgment.

### III. CONCLUSION

Based on the foregoing analysis, Centenary's motion for summary judgment is **GRANTED**. See Record Document 20. All claims by the plaintiff against the defendant are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 2nd day of November, 2005.



JUDGE TOM STAGG

---

Vaughner v. Pulito, 804 F.2d 873, 877 n.2 (5th Cir. 1986).